ORIGINAL

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

JUDY PHILIPS
First Assistant U.S. Attorney

MICHAEL NAMMAR
MICAH SMITH
MARK A. INCIONG     CA BAR # 163443
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:   Michael.Nammar@usdoj.gov
           Micah.Smith@usdoj.gov
           Mark.Inciong@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 04 2020

at ___ o'clock and ___ min ___ M
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. |
| | ) |
| Plaintiff, | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE: |
| WAYNE MILLER, | ) TIME |
| | ) JUDGE: |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, WAYNE MILLER, and his attorney,

Max Mizono, Esq., have agreed upon the following:

## THE CHARGES

1.     The defendant acknowledges that he has been charged in an

Information with violating Title 18, United States Code, Section 1962(d).

2.     The defendant has read the charge against him contained in the

Information, and that charge has been fully explained to him by his attorney.

3.     The defendant fully understands the nature and elements of the crime

with which he has been charged.

## THE AGREEMENT

4.     The defendant agrees to waive indictment and enter a voluntary plea

of guilty to the Information, which charges him with conspiring to violate the

racketeering laws of the United States, namely, Title 18, United States Code,

Section 1962(c).   The defendant is aware that he has the right to have this felony

asserted against him by way of grand jury indictment.   The defendant hereby

waives this right and consents that this offense may be charged against him by way

of the Information.   In return, the government agrees to move to dismiss Criminal

2

Complaint Crim. No. 19-01076-KSC as to the defendant after sentencing and the government agrees not to file additional charges against the defendant related to his participation, beginning in or about 2014 and up to in or about the fall of 2018, in the racketeering enterprise described in the Information.   The government further agrees, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that a sentence of no more than 20 years' imprisonment is the appropriate disposition of the case.   The parties reserve their right, however, to argue that a sentence of less than 20 years' imprisonment is appropriate.

5.    The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.    The defendant enters this plea because he is in fact guilty of conspiring to violate the racketeering laws of the United States, namely, Title 18, United States Code, Section 1962(c) as charged in the Information, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7.    The defendant understands that the penalties for the offense to which he is pleading guilty include:

a.    A term of imprisonment of up to 20 years and a fine of up to $250,000, plus a term of supervised release of up to 3 years.

3

b.      In addition, the Court must impose a $100 special assessment as to the count to which the defendant is pleading guilty.   The defendant agrees to pay $100 for the count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessment, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

c.      **Forfeiture.**  Title 18, United States Code, Section 1963 authorizes forfeiture of any interest the defendant has acquired or maintained in violation of Title 18, United States Code, Section 1962; of any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendant established, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any property constituting, or derived from, any proceeds obtained directly or indirectly from racketeering activity in violation of Title 18, United States Code, Section 1962.

d.      **Restitution.**   The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's offenses.   The defendant understands that the Court will

4

determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office.   The defendant agrees to pay restitution for all losses caused by the defendant's conduct, regardless of whether the counts of the Information associated with such losses will be dismissed as part of this Agreement.

### FACTUAL STIPULATIONS

8.    The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

a.    Beginning at least in or around 2014, WAYNE MILLER, the defendant, and others known and unknown, were members and associates of the "Miske Enterprise."   Members and associates of the Miske Enterprise operated principally under the direction and protection of Michael J. Miske, Jr., who used his power over members and associates of the Miske Enterprise, his reputation for violence in the community, and the various corporate entities under his control to enrich the members and associates of the Miske Enterprise and to protect their criminal activities.

b.    The Miske Enterprise, including its leadership, membership, and associates, constituted an "enterprise" as that term is defined in Title 18,

5

United States Code, Section 1961(4), that is, a group of individuals and entities associated in fact. The Miske Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Miske Enterprise operated within the District of Hawaii and elsewhere and constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Miske Enterprise.

c.     Beginning at least in or about 2014, MILLER and others known and unknown, being persons employed by and associated with the Miske Enterprise, willfully and knowingly combined, conspired, confederated, and agreed to together and with each other to violate the racketeering laws of the United States, namely, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Miske Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

d.     The racketeering activity to which MILLER and others agreed included: (a) acts involving murder; (b) acts involving kidnapping; (c) acts relating to the use of interstate commerce facilities in the commission of murder-for-hire; (d) offenses involving the felonious trafficking of controlled substances; and (e) acts relating to obstruction of justice, as alleged in the Information.

6

    e.    Beginning in or about the spring of 2016, MILLER and others agreed to assist Miske with carrying out the kidnapping and murder of Johnathan Fraser.   Although MILLER hoped that Miske would eventually change his mind and not carry through with his intentions to kidnap and murder Fraser, MILLER nonetheless agreed to assist Miske in developing a plan and understood that Miske intended to carry out the plan.   MILLER did not directly participate in carrying out the kidnapping or murder, but he assisted in other ways, including by helping Miske with planning and by purchasing items that Miske intended to use to carry out the kidnapping and murder.   Fraser was kidnapped and murdered on or about July 30, 2016.   In the fall of 2018, at a time when the United States did not have sufficient evidence to charge him for his role in this murder, MILLER disclosed to the United States in proffer-protected statements that he had played a role in the 2016 kidnapping and murder of Fraser.   As part of his guilty plea, MILLER agrees to acknowledge these facts that he previously disclosed in proffer-protected statements.

    f.    In the fall of 2018, at a time when the United States did not have sufficient evidence to charge him for his role in these offenses, MILLER disclosed to the United States in proffer-protected statements that between in or about 2015 and in or about 2016, Miske had instructed MILLER to arrange for

7

other individuals to be assaulted and even murdered.   In addition to Fraser, as described above, Miske instructed MILLER to arrange for five other individuals to be murdered.   Although MILLER agreed to assist Miske, none of these individuals were ultimately killed.   As part of his guilty plea, MILLER agrees to acknowledge these facts that he previously admitted in proffer-protected statements.

    g. In or about October 2017, MILLER agreed to kidnap an accountant on Miske's behalf.   MILLER and another individual kidnapped the accountant in Honolulu, Hawaii, but ultimately released him.

    h. From at least in or about 2014 until in or about 2018, MILLER distributed controlled substances, including methamphetamine.   In or about 2014, MILLER and another of Miske's associates attempted to arrange an approximately $400,000 cocaine transaction on Miske's behalf, but were arrested in California before they could arrange for the cocaine to be transported to Hawaii.

    i. In or about 2016, Miske instructed an employee of one of his companies to create fraudulent pay stubs for MILLER so that MILLER could submit them to his probation officer and pretend to have been legitimately employed.   MILLER did in fact receive and submit these fraudulent pay stubs to his probation officer.

9.      Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.      As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

9

b.     The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.   The parties further agree, however, that if the Court accepts the plea agreement, the Court is bound to the parties'

10

agreement, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that a sentence of no more than 20 years' imprisonment is the appropriate disposition of the case.

12.     The parties represent that as of the date of this agreement there are no material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13.     The defendant is aware that he has the right to appeal his conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution order imposed, or the manner in which the sentence or restitution order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement.   The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

a.     The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as

11

indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

      b.    If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

      c.    The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

    14.    In connection with the collection of restitution or other financial obligations that may be imposed upon him, the defendant agrees as follows:

      a.    The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party. The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement. To avoid the requirement of the defendant completing financial

12

statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

b.    The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also

13

authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

       c.       Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## IMPOSITION OF SENTENCE

15.    The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

16.    The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately

14

reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

17.    The defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.    If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

15

     c.    If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

     d.    At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

     e.    At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

18.    The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

19.    If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes

16

a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The _only_ exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

20.    The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## COOPERATION

21.    The defendant agrees that he will fully cooperate with the United States.

17

a.      The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

b.      The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.      The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Information or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.      The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

     e.    Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

22.    In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.  The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

23.    Pursuant to Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.  The defendant understands that:

19

      a.     The decision as to whether to make such a request or motion is entirely up to the prosecution.

      b.     This Agreement does not require the prosecution to make such a request or motion.

      c.     This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

      d.     Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

24.    The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

25.    To become effective, this Agreement must be signed by all signatories listed below.

26.     Should the Court refuse to accept this Agreement, it is null and void
and neither party shall be bound thereto.

DATED:   Honolulu, Hawaii, *November 10, 2020.*

AGREED:

KENJI M. PRICE
United States Attorney
District of Hawaii


JUDY PHILIPS
First Assistant U.S. Attorney

MAX MIZONO
Attorney for Defendant


MICHAEL D. NAMMAR
MICAH SMITH
MARK A. INCIONG
Assistant U.S. Attorneys

WAYNE MILLER
Defendant

21