1           IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF HAWAII

3

    UNITED STATES OF AMERICA,    ) CRIMINAL NO. 20-00113-DKW
4                                )
                Plaintiff,       ) Honolulu, Hawaii
5                                )
        vs.                      ) December 4, 2020
6                                )
    WAYNE MILLER,                ) 1) WAIVER OF INDICTMENT
7                                )
                Defendant.       ) 2) ARRAIGNMENT AND PLEA OF
8    _____ ) GUILTY TO THE SINGLE COUNT
                                 ) INFORMATION
9

10        TRANSCRIPT OF PROCEEDINGS VIA TELEPHONE CONFERENCE
              BEFORE THE HONORABLE DERRICK K. WATSON,
11            CHIEF UNITED STATES DISTRICT COURT JUDGE

12
    APPEARANCES:
13

14  For the Plaintiff:         MARK INCIONG, ESQ.
                               MICAH SMITH, ESQ.
15                             MICHAEL NAMMAR, ESQ.
                               Office of the United States Attorney
16                             PJKK Federal Building
                               300 Ala Moana Boulevard, Suite 6100
17                             Honolulu, Hawaii  96850

18  For the Defendant:         MAXIMILIAN MIZONO, ESQ.
                               Office of the Federal Public Defender
19                             PJKK Federal Building
                               300 Ala Moana Blvd., Rm 7-104
20                             Honolulu, Hawaii  96850

21
    Official Court Reporter:   Gloria T. Bediamol, RPR RMR CRR FCRR
22                             United States District Court
                               300 Ala Moana Boulevard
23                             Honolulu, Hawaii 96850

24
     Proceedings recorded by machine shorthand, transcript produced
25  with computer-aided transcription (CAT).

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  | December 4, 2020                              11:05 a.m. |
| 11:05AM  | 2  | THE CLERK:  Calling Criminal Number 20-00113-DKW,       |
| 11:05AM  | 3  | United States of America versus Defendant (01) Wayne Miller. |
| 11:05AM  | 4  | This case has been called for a telephonic hearing on   |
| 11:05AM  | 5  | a waiver of indictment, arraignment and plea of guilty to the |
| 11:05AM  | 6  | single count information as to defendant Wayne Miller.   |
| 11:05AM  | 7  | Counsel, please make your appearances for the record.   |
| 11:05AM  | 8  | Mr. Inciong and Mr. Mizono, can you please make your     |
| 11:06AM  | 9  | appearances for the record?                             |
| 11:06AM  | 10 | MR. MIZONO:  Yes, Tammy, good morning.  This is Max     |
| 11:06AM  | 11 | Mizono on behalf of Mr. Miller, he is present with us   |
| 11:06AM  | 12 | telephonically.  I was waiting for Mr. Inciong to go first, but |
| 11:06AM  | 13 | maybe he is off the call now.                           |
| 11:06AM  | 14 | THE CLERK:  Mr. Inciong, can you hear us?               |
| 11:06AM  | 15 | MR. INCIONG:  I can.  Can you hear me?                  |
| 11:06AM  | 16 | THE CLERK:  Can you make your appearance on the         |
| 11:06AM  | 17 | record?                                                 |
| 11:06AM  | 18 | MR. INCIONG:  Okay, I did.  I'm sorry, for some reason  |
| 11:06AM  | 19 | it didn't go through.  Good morning, Your Honor.  This is Mark |
| 11:06AM  | 20 | Inciong on behalf of the United States along with Micah Smith |
| 11:06AM  | 21 | and Michael Nammar.                                     |
| 11:06AM  | 22 | THE COURT:  Mr. Inciong, Mr. Nammar and Mr. Smith,     |
| 11:06AM  | 23 | good morning.  Good morning to you, Mr. Miller, as well as to |
| 11:06AM  | 24 | Mr. Mizono who made the appearance on your behalf.  Hopefully |
| 11:06AM  | 25 | all of you can hear me just fine.                      |

| 11:06AM | 1 | MR. MIZONO:  Yes, Your Honor. |
| 11:07AM | 2 | MR. INCIONG:  Yes, Your Honor. |
| 11:07AM | 3 | THE COURT:  We are here this morning because the |
| 11:07AM | 4 | defendant as I understand it, Mr. Miller, wishes to do two |
| 11:07AM | 5 | things:  First, to waive indictment and to proceed by |
| 11:07AM | 6 | information; and secondly, to plead guilty to the single count |
| 11:07AM | 7 | that is set forth in the November 12, 2020 information, and he |
| 11:07AM | 8 | wishes to do so pursuant to a plea agreement. |
| 11:07AM | 9 | All parties and their counsel, as I understand it, |
| 11:07AM | 10 | have agreed to proceed with this hearing this morning by |
| 11:07AM | 11 | telephone.  Before doing so, I would like to get a few things |
| 11:07AM | 12 | on the record. |
| 11:07AM | 13 | First of all, pursuant to Section 15002 of the CARES |
| 11:07AM | 14 | Act, the Coronavirus, Aid, Relief, and Economic Security Act, |
| 11:07AM | 15 | there are certain circumstances in which a defendant may |
| 11:07AM | 16 | consent, after consultation with counsel, to proceed with a |
| 11:07AM | 17 | change of plea hearing such as this one by telephone. |
| 11:07AM | 18 | On November 12th of this year, in what has turned out |
| 11:08AM | 19 | to be a series of orders, but most recently on November 12th, |
| 11:08AM | 20 | the chief judge for this court found that certain change of |
| 11:08AM | 21 | plea hearings, including this one, cannot be conducted in |
| 11:08AM | 22 | person without seriously jeopardizing public health and safety. |
| 11:08AM | 23 | And Judge Seabright made that finding pursuant to Section |
| 11:08AM | 24 | 15002, subsection (b)(2) of the CARES Act. |
| 11:08AM | 25 | Mr. Miller, your counsel has advised that you consent |

| | | |
|---|---|---|
| 11:08AM | 1 | to proceed this morning by telephone, which is obviously why we |
| 11:08AM | 2 | scheduled this hearing.  I'd like to get that consent on the |
| 11:08AM | 3 | record before we proceed any further. |
| 11:08AM | 4 | So, Mr. Miller, have you consulted with your counsel, |
| 11:08AM | 5 | Mr. Mizono, concerning whether or not to proceed this morning |
| 11:08AM | 6 | with your change of plea hearing by telephone rather than |
| 11:08AM | 7 | through an in-person appearance in court? |
| 11:08AM | 8 | THE DEFENDANT:  Yes, Your Honor. |
| 11:08AM | 9 | THE COURT:  And, Mr. Mizono, can you concur or do you |
| 11:08AM | 10 | concur that such consultation with Mr. Miller has in fact |
| 11:09AM | 11 | occurred? |
| 11:09AM | 12 | MR. MIZONO:  Yes, Your Honor.  I spoke with him |
| 11:09AM | 13 | several times prior to this hearing about his appearance |
| 11:09AM | 14 | telephonically, and I understand he agrees to appear |
| 11:09AM | 15 | telephonically. |
| 11:09AM | 16 | THE COURT:  All right.  And, Mr. Miller, having so |
| 11:09AM | 17 | consulted, do you consent to proceed this morning with your |
| 11:09AM | 18 | change of plea hearing by telephone? |
| 11:09AM | 19 | THE DEFENDANT:  Yes, Your Honor. |
| 11:09AM | 20 | THE COURT:  Can you speak up?  I did not hear your |
| 11:09AM | 21 | response. |
| 11:09AM | 22 | THE DEFENDANT:  Yes, Your Honor. |
| 11:09AM | 23 | THE COURT:  All right.  In addition, I find that this |
| 11:09AM | 24 | change of plea hearing cannot be further delayed without |
| 11:09AM | 25 | serious harm to the interest of justice.  In particular, as we |

11:09AM   1   have all come to know, unfortunately COVID-19 is an

11:09AM   2   international pandemic and has been since the early part of

11:09AM   3   2020 with no discernible end in sight.  As mentioned, the chief

11:09AM   4   judge of this court has already found in a series of CARES Act

11:09AM   5   orders, with the most recent one being on November 12th, that

11:09AM   6   change of plea hearings, like this one, cannot proceed in

11:09AM   7   person without seriously jeopardizing public health and safety.

11:10AM   8        The defendant is, as I understand it, is on the

11:10AM   9   mainland.  And in order to appear in person would have to

11:10AM   10   travel by plane to Honolulu.  Doing so would subject not only

11:10AM   11   the defendant but any law enforcement escorts and others to

11:10AM   12   enhanced risk presented by the current pandemic and will also

11:10AM   13   require them to quarantine in order to comply with state law.

11:10AM   14   And that's, in my mind, neither practical nor sensible.

11:10AM   15        Moreover, the facility in which the defendant is

11:10AM   16   housed, as I understand it from the U.S. Attorney's Office,

11:10AM   17   does not have video conferencing capabilities.  So the only

11:10AM   18   method that would allow us to proceed this morning is the

11:10AM   19   telephone, to which again all parties and their counsel

11:10AM   20   consent.

11:10AM   21        I note also that there is limited programming

11:10AM   22   available to pretrial detainees.  And, as a result, until

11:10AM   23   Mr. Miller is put into the sentencing queue and is ultimately

11:10AM   24   sentenced, he will not be eligible for additional programming

11:10AM   25   that could result in a number of changes beneficial to him,

11:11AM  1   including the possibility of earlier release, and a lower

11:11AM  2   security classification.

11:11AM  3        And, finally, the Court finds that delay would

11:11AM  4   eventually result in a backlog of criminal matters, which is

11:11AM  5   not speculation because that is precisely what occurred earlier

11:11AM  6   this year when the same pandemic closed our courthouse all

11:11AM  7   together from roughly mid March to mid June.

11:11AM  8        Mr. Miller, before accepting either your waiver or

11:11AM  9   your plea this morning, there are a number of questions that I

11:11AM  10  need to ask you to ensure that your decisions are both knowing

11:11AM  11  and voluntary.  If any of the questions that I'm about to ask

11:11AM  12  you are unclear for some reason or ambiguous to you, please

11:11AM  13  identify them -- that fact for me, and I will do my best to

11:11AM  14  provide clarification.  Do you understand that, sir?

11:11AM  15       THE DEFENDANT:  Yes, Your Honor.

11:11AM  16       THE COURT:  Please, Ms. Kimura, would you swear the

11:11AM  17  defendant?

11:11AM  18       THE CLERK:  Please raise your right hand.

11:11AM  19       (The defendant was sworn to answer truthfully.)

11:12AM  20       THE COURT:  Mr. Miller, please understand that you

11:12AM  21  have taken an oath this morning to answer my questions

11:12AM  22  truthfully, and if you do anything other than that you could be

11:12AM  23  subjecting yourself to additional charges; do you understand

11:12AM  24  that?

11:12AM  25       THE DEFENDANT:  Yes, Your Honor.

| | | |
|---|---|---|
| 11:12AM | 1 | THE COURT:  Please state your full name. |
| 11:12AM | 2 | THE DEFENDANT:  Wayne Miller. |
| 11:12AM | 3 | THE COURT:  How old are you, sir? |
| 11:12AM | 4 | THE DEFENDANT:  37. |
| 11:12AM | 5 | THE COURT:  Could you turn that up a tad?  Mr. Miller, |
| 11:12AM | 6 | could you state your age again, I did not hear that. |
| 11:12AM | 7 | THE DEFENDANT:  37. |
| 11:12AM | 8 | THE COURT:  I'm sorry, we are adjusting our volume at |
| 11:12AM | 9 | this end.  I still did not hear your response. |
| 11:12AM | 10 | THE DEFENDANT:  37. |
| 11:12AM | 11 | THE COURT:  37, okay.  Thank you.  What is the highest |
| 11:12AM | 12 | level of education that you have achieved? |
| 11:12AM | 13 | THE DEFENDANT:  12th. |
| 11:12AM | 14 | THE COURT:  Did you graduate from high school? |
| 11:12AM | 15 | THE DEFENDANT:  Yes, Your Honor. |
| 11:12AM | 16 | THE COURT:  Okay.  And who is your most recent |
| 11:12AM | 17 | employer? |
| 11:12AM | 18 | THE DEFENDANT:  I think it was Netflix. |
| 11:13AM | 19 | THE COURT:  Netflix? |
| 11:13AM | 20 | THE DEFENDANT:  Yes, Your Honor. |
| 11:13AM | 21 | THE COURT:  And what did you do for that company? |
| 11:13AM | 22 | THE DEFENDANT:  Driver. |
| 11:13AM | 23 | THE COURT:  You were a driver.  Okay.  As a high |
| 11:13AM | 24 | school graduate, you understand, speak, and I assume you write |
| 11:13AM | 25 | English all just fine; is that fair? |

11:13AM   1          THE DEFENDANT:  Yes, Your Honor.

11:13AM   2          THE COURT:  And have you taken any type of drugs,

11:13AM   3   legal or illegal, within the past 48 hours?

11:13AM   4          THE DEFENDANT:  No, Your Honor.

11:13AM   5          THE COURT:  And have you consumed any alcohol, sir, in

11:13AM   6   the past 24 hours?

11:13AM   7          THE DEFENDANT:  No, Your Honor.

11:13AM   8          THE COURT:  And is it fair to say, Mr. Miller, that

11:13AM   9   you are both clean and sober and thinking clearly this morning?

11:13AM   10         THE DEFENDANT:  Yes, Your Honor.

11:13AM   11         THE COURT:  What is your understanding, Mr. Miller, of

11:13AM   12   the purpose of this morning's hearing?

11:13AM   13         THE DEFENDANT:  Acceptance of plea, change of plea.

11:13AM   14         THE COURT:  And is it also your intent to waive

11:13AM   15   indictment and proceed by information?

11:13AM   16         THE DEFENDANT:  Yes, Your Honor.

11:13AM   17         THE COURT:  And have you had enough time, sir, to

11:13AM   18   discuss these decisions whether or not to waive indictment and

11:14AM   19   whether or not to plead guilty as well as to discuss this case

11:14AM   20   generally with Mr. Mizono, your counsel?

11:14AM   21         THE DEFENDANT:  Yes, Your Honor.

11:14AM   22         THE COURT:  And are you satisfied with his

11:14AM   23   representation of you thus far in this case?

11:14AM   24         THE DEFENDANT:  Yes, Your Honor.

11:14AM   25         THE COURT:  Mr. Mizono, do you have any reason to

11:14AM  1  doubt Mr. Miller's capacity or competence to either waive

11:14AM  2  indictment or to enter a knowing and informed plea this

11:14AM  3  morning?

11:14AM  4          MR. MIZONO:  No, Your Honor.

11:14AM  5          THE COURT:  Mr. Miller, there is a single charge that

11:14AM  6  is set forth in the information.  That count -- that Count 1

11:14AM  7  charges you with conspiring to violate the racketeering laws of

11:14AM  8  the United States in violation of Title 18 of the United States

11:14AM  9  Code, Section 1962.

11:14AM  10         Have you discussed this charge and the allegations

11:14AM  11  associated with this charge with counsel?

11:14AM  12         THE DEFENDANT:  Yes, Your Honor.

11:14AM  13         THE COURT:  And based on your reading and discussions,

11:14AM  14  are you confident, sir, that you understand the nature of the

11:14AM  15  charges that have been brought against you?

11:14AM  16         THE DEFENDANT:  Yes, Your Honor.

11:15AM  17         THE COURT:  Mr. Miller, do you understand the charges

11:15AM  18  that have been brought against you?

11:15AM  19         THE DEFENDANT:  Yes, Your Honor.

11:15AM  20         THE COURT:  Do you have any questions at all regarding

11:15AM  21  these charges?

11:15AM  22         THE DEFENDANT:  No, Your Honor.

11:15AM  23         THE COURT:  Do you understand, sir, that you do have

11:15AM  24  the constitutional right to be charged by a grand jury

11:15AM  25  indictment, but you can waive that right and consent to be

11:15AM   1   charged by an information that is filed by the U.S. Attorney?

11:15AM   2          THE DEFENDANT:  Yes, Your Honor.

11:15AM   3          THE COURT:  Do you understand further, sir, that

11:15AM   4   unless you waive indictment, you cannot be charged with a

11:15AM   5   felony offense, such as the Title 18 violation that you have

11:15AM   6   been charged with, unless the grand jury were to return an

11:15AM   7   indictment finding that there is probable cause to believe that

11:15AM   8   a federal crime has been committed and that you committed it?

11:15AM   9          THE DEFENDANT:  Yes, sir.

11:15AM  10          THE COURT:  I know you have likely discussed the grand

11:15AM  11   jury process with Mr. Mizono, but at the risk of some

11:15AM  12   redundancy I want to go over a little bit about that process

11:15AM  13   with you myself.

11:16AM  14          First of all, Mr. Miller, do you understand, sir, that

11:16AM  15   a grand jury is a body of at least 16 but not more than 23

11:16AM  16   impartial citizens from this local community?

11:16AM  17          THE DEFENDANT:  Yes, Your Honor.

11:16AM  18          THE COURT:  Do you further understand, sir, that if

11:16AM  19   you do not waive indictment, the United States could present

11:16AM  20   evidence of your conduct to that grand jury, which would then

11:16AM  21   vote in private to determine once again if there is probable

11:16AM  22   cause to believe that a federal crime has been committed and

11:16AM  23   that you committed it?

11:16AM  24          THE DEFENDANT:  Yes, Your Honor.

11:16AM  25          THE COURT:  Do you further understand, Mr. Miller,

| 11:16AM | 1 | that if at least 12 of those grand jurors vote to so find, they |
|---|---|---|
| 11:16AM | 2 | would return what is known as an indictment against you; and on |
| 11:16AM | 3 | the other hand, if at least 12 of the grand jurors do not so |
| 11:16AM | 4 | find, they would not return an indictment against you?  In |
| 11:16AM | 5 | other words, the grand jury may or may not indict you based on |
| 11:16AM | 6 | the information presented to it by the United States; do you |
| 11:16AM | 7 | understand that? |
| 11:16AM | 8 | THE DEFENDANT:  Yes, Your Honor. |
| 11:16AM | 9 | THE COURT:  Do you further understand, sir, that if |
| 11:16AM | 10 | you waive indictment by a grand jury, the information filed by |
| 11:17AM | 11 | the U.S. Attorney in this case on November 12, 2020 will serve |
| 11:17AM | 12 | exactly as if an indictment had issued? |
| 11:17AM | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 11:17AM | 14 | THE COURT:  And have you discussed this process, this |
| 11:17AM | 15 | grand jury process with counsel? |
| 11:17AM | 16 | THE DEFENDANT:  Yes, Your Honor. |
| 11:17AM | 17 | THE COURT:  And do you have any questions regarding |
| 11:17AM | 18 | this process? |
| 11:17AM | 19 | THE DEFENDANT:  No, Your Honor. |
| 11:17AM | 20 | THE COURT:  And are you confident, sir, that you |
| 11:17AM | 21 | understand the grand jury process? |
| 11:17AM | 22 | THE DEFENDANT:  Yes, Your Honor. |
| 11:17AM | 23 | THE COURT:  Is it still your intent, sir, to waive |
| 11:17AM | 24 | indictment? |
| 11:17AM | 25 | THE DEFENDANT:  Yes, Your Honor. |

11:17AM  1           THE COURT:  Now, Mr. Miller, to accomplish that
11:17AM  2   waiver, there are a couple of things that I think you've
11:17AM  3   already done, one is to sign your plea agreement which
11:17AM  4   references your waiver, but you've also signed -- or at least
11:17AM  5   it looks like your signature that was affixed on a single page
11:17AM  6   waiver of an indictment form.  Do you recall signing that
11:17AM  7   document?
11:17AM  8           THE DEFENDANT:  Yes, Your Honor.
11:17AM  9           THE COURT:  All right.  And, Mr. Mizono, it looks like
11:17AM  10  you signed the same single page that your client signed with
11:17AM  11  respect to the waiver; is that also true?
11:17AM  12          MR. MIZONO:  Yes, that's correct, Your Honor.
11:17AM  13          THE COURT:  So the Court has also countersigned that
11:18AM  14  same one-paged document, I have dated it today's date,
11:18AM  15  December 4th of 2020.  I'm handing it now to Ms. Kimura to
11:18AM  16  place on the docket in this matter later this morning once the
11:18AM  17  hearing is concluded.  The Court finds then that Mr. Miller
11:18AM  18  knowingly and voluntarily waives indictment and consents to
11:18AM  19  proceed by information.
11:18AM  20          Mr. Miller, with respect to your plea, once again my
11:18AM  21  understanding is that you intend to plead guilty this morning
11:18AM  22  to the single count set forth in the information, I've already
11:18AM  23  summarized that count for you.  Has anyone, sir, threatened,
11:18AM  24  forced, or coerced you into pleading guilty this morning?
11:18AM  25          THE DEFENDANT:  No, Your Honor.

| | | |
|---|---|---|
| 11:18AM | 1 | THE COURT:  Has anyone to your knowledge threatened, |
| 11:18AM | 2 | forced, or coerced someone close to you, meaning a close friend |
| 11:18AM | 3 | or a relative, in order to get you to plead guilty? |
| 11:18AM | 4 | THE DEFENDANT:  No, Your Honor. |
| 11:18AM | 5 | THE COURT:  Has anyone made any promises to you other |
| 11:18AM | 6 | than the promises that the government has made in its written |
| 11:19AM | 7 | plea agreement with you in order to get you to plead guilty? |
| 11:19AM | 8 | THE DEFENDANT:  No, Your Honor. |
| 11:19AM | 9 | THE COURT:  Are you pleading guilty this morning, |
| 11:19AM | 10 | Mr. Miller, because you are guilty of the conduct alleged in |
| 11:19AM | 11 | Count 1? |
| 11:19AM | 12 | THE DEFENDANT:  Yes, Your Honor. |
| 11:19AM | 13 | THE COURT:  Mr. Inciong, what are the potential |
| 11:19AM | 14 | penalties that Mr. Miller faces for pleading guilty to Count 1. |
| 11:19AM | 15 | MR. INCIONG:  Your Honor, the penalties that apply to |
| 11:19AM | 16 | that particular count are as follows: |
| 11:19AM | 17 | There is a maximum term of imprisonment of up to |
| 11:19AM | 18 | 20 years, along with a fine of up to $250,000.  There is also a |
| 11:19AM | 19 | term of supervised release of up to three years that also |
| 11:19AM | 20 | applies.  And, finally, there is a $100 mandatory special |
| 11:19AM | 21 | assessment. |
| 11:19AM | 22 | THE COURT:  Is there a forfeiture component, |
| 11:19AM | 23 | Mr. Inciong, to this particular defendant's plea? |
| 11:19AM | 24 | MR. INCIONG:  Generally, Your Honor, there is.  There |
| 11:19AM | 25 | is no specific forfeiture findings or stipulations at this |

| | | |
|---|---|---|
| 11:19AM | 1 | time.  However, the plea agreement does call for forfeiture if |
| 11:20AM | 2 | in fact it becomes applicable down the line. |
| 11:20AM | 3 | THE COURT:  Mr. Mizono, do you agree with the |
| 11:20AM | 4 | potential penalties that your client faces for pleading guilty |
| 11:20AM | 5 | to Count 1 as just described by AUSA Inciong? |
| 11:20AM | 6 | MR. MIZONO:  Yes, I agree. |
| 11:20AM | 7 | THE COURT:  Mr. Miller, do you, sir, understand the |
| 11:20AM | 8 | potential penalties that you face for pleading guilty to Count |
| 11:20AM | 9 | 1? |
| 11:20AM | 10 | THE DEFENDANT:  Yes, Your Honor. |
| 11:20AM | 11 | THE COURT:  Mr. Miller, you have entered into a |
| 11:20AM | 12 | written plea agreement with the United States; is that correct? |
| 11:20AM | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 11:20AM | 14 | THE COURT:  Have you read that agreement in full? |
| 11:20AM | 15 | THE DEFENDANT:  Yes, Your Honor. |
| 11:20AM | 16 | THE COURT:  And have you had an opportunity to discuss |
| 11:20AM | 17 | that agreement with counsel? |
| 11:20AM | 18 | THE DEFENDANT:  Yes, Your Honor. |
| 11:20AM | 19 | THE COURT:  Based on your review and discussions, are |
| 11:20AM | 20 | you confident, sir, that you understand each of the terms of |
| 11:20AM | 21 | your plea agreement with the government? |
| 11:20AM | 22 | THE DEFENDANT:  Yes, Your Honor. |
| 11:20AM | 23 | THE COURT:  Can you say that again, sir? |
| 11:20AM | 24 | THE DEFENDANT:  Yes, Your Honor. |
| 11:20AM | 25 | THE COURT:  And, Mr. Mizono, are you satisfied that |

11:20AM  1   your client, Mr. Miller, understands the terms of his plea

11:20AM  2   agreement?

11:20AM  3           MR. MIZONO:  Yes, Your Honor, I'm satisfied.

11:20AM  4           THE COURT:  Mr. Miller, did you sign the plea

11:21AM  5   agreement, the 21-paged document on the final page, page 21,

11:21AM  6   with the execution date of November 10, 2020?

11:21AM  7           THE DEFENDANT:  Yes, Your Honor.

11:21AM  8           THE COURT:  Does the written plea agreement that you

11:21AM  9   signed reflect the entire agreement that you have with the

11:21AM  10  United States?

11:21AM  11          THE DEFENDANT:  Yes, Your Honor.

11:21AM  12          THE COURT:  Said similarly, did the government make

11:21AM  13  any verbal or oral promises to you that they did not put into

11:21AM  14  the written plea agreement?

11:21AM  15          THE DEFENDANT:  No, Your Honor.

11:21AM  16          THE COURT:  Okay.  And do you understand, sir, that

11:21AM  17  the Court is not required to accept your plea agreement and

11:21AM  18  that I could reject it?  I have made no decision regarding

11:21AM  19  that, but I could reject it after considering a presentence

11:21AM  20  investigation report that will be prepared after the conclusion

11:21AM  21  of this morning's hearing.

11:21AM  22          THE DEFENDANT:  Yes, Your Honor.

11:21AM  23          THE COURT:  Do you further understand, Mr. Miller,

11:21AM  24  that any stipulations in your plea agreement are stipulations

11:21AM  25  between you and the U.S. Attorney's Office, and that the Court

11:21AM   1    specifically is not bound by those stipulations?

11:22AM   2             THE DEFENDANT:  Yes, Your Honor.

11:22AM   3             THE COURT:  Mr. Inciong, would you then describe the

11:22AM   4    essential terms of the government's plea agreement with

11:22AM   5    Mr. Miller including any appellate waiver provisions?

11:22AM   6             MR. INCIONG:  Yes, Your Honor.  This plea agreement,

11:22AM   7    Your Honor, is being presented pursuant to Federal Rule of

11:22AM   8    Criminal Procedure 11(c)(1)(C).  In that agreement the

11:22AM   9    defendant acknowledges that he has been charged in the

11:22AM   10   information with violating Title 18, United States Code,

11:22AM   11   Section 1962(d).  The defendant fully understands the nature

11:22AM   12   and elements of this crime with which he has been charged.

11:22AM   13            Pursuant to the plea agreement, the defendant has

11:22AM   14   agreed to waive indictment and enter a voluntary plea of guilty

11:22AM   15   to the information which charges him with conspiring to violate

11:22AM   16   the racketeering laws of the United States, specifically, the

11:22AM   17   statute section I just mentioned, Title 18, United States Code,

11:22AM   18   Section 1962(c).

11:22AM   19            The defendant is aware that he would have the right

11:23AM   20   ordinarily to have this felony asserted against him by way of a

11:23AM   21   grand jury indictment.  The defendant has waived this right and

11:23AM   22   has consented that the offense may be charged against him by

11:23AM   23   way of the information.  In return, the government has agreed

11:23AM   24   to dismiss Criminal Complaint Number 19-01076-KSC as to the

11:23AM   25   defendant after sentencing.

11:23AM   1          In addition, the government agrees not to file any
11:23AM   2   additional charges against the defendant related to his
11:23AM   3   participation beginning in or about the year 2014 and
11:23AM   4   continuing up to in or about the fall of the year 2018 in the
11:23AM   5   racketeering enterprise described in the information.
11:23AM   6          The United States further agrees, pursuant to Federal
11:23AM   7   Rule of Criminal Procedure 11(c)(1)(C), that a sentence of no
11:23AM   8   more than 20 years of imprisonment, which is the maximum
11:23AM   9   according to the statute in this case, is the appropriate
11:24AM   10  disposition of the case.  The parties do reserve their right
11:24AM   11  however to argue that a sentence of less than 20 years
11:24AM   12  imprisonment is appropriate at the time of sentencing if they
11:24AM   13  so wish.
11:24AM   14         The defendant is entering this plea because he is in
11:24AM   15  fact guilty of conspiring to violate the racketeering laws of
11:24AM   16  the United States as charged in the information and agrees that
11:24AM   17  his plea is voluntary and not the result of any force or
11:24AM   18  threat.
11:24AM   19         There are a number of factual stipulations in the
11:24AM   20  agreement at page 5 continuing to page 6, 7, 8 -- concluding at
11:24AM   21  page 8.  There are a number of sentencing stipulations as well.
11:24AM   22  The parties do agree that the charge to which the defendant is
11:24AM   23  pleading guilty adequately reflects the seriousness of the
11:24AM   24  actual offense behavior and that accepting this plea agreement
11:24AM   25  would not undermine any statutory purposes of sentencing.

| | | |
|---|---|---|
| 11:25AM | 1 | The parties further stipulate, pursuant to Rule 32.1 |
| 11:25AM | 2 | of the local rules of the United States District Court for the |
| 11:25AM | 3 | District of Hawaii and Section 6B1.4 of the Sentencing |
| 11:25AM | 4 | Guidelines that as of the date of this agreement, it is |
| 11:25AM | 5 | expected that the defendant will enter a guilty plea prior to |
| 11:25AM | 6 | the commencement of trial, will truthfully admit his |
| 11:25AM | 7 | involvement in the offense and related conduct and will not |
| 11:25AM | 8 | engage in conduct that is inconsistent with such acceptance of |
| 11:25AM | 9 | responsibility. |
| 11:25AM | 10 | If all these events occur and the defendant's |
| 11:25AM | 11 | acceptance of responsibility continues through the date of |
| 11:25AM | 12 | sentencing, a downward adjustment of minus two levels for |
| 11:25AM | 13 | acceptance of responsibility would be appropriate, according to |
| 11:25AM | 14 | Section 3E1.1(a) of the Sentencing Guidelines as well as |
| 11:25AM | 15 | Application Note 3. |
| 11:25AM | 16 | The United States Attorney further agrees that the |
| 11:25AM | 17 | defendant's agreement herein to enter into a guilty plea |
| 11:26AM | 18 | constitutes notice of intent to plead guilty in a timely manner |
| 11:26AM | 19 | so as to permit the government to avoid preparing for trial as |
| 11:26AM | 20 | to this defendant.  Accordingly, the United States Attorney |
| 11:26AM | 21 | anticipates moving in the government's sentencing statement for |
| 11:26AM | 22 | a one-level reduction in sentencing offense level pursuant to |
| 11:26AM | 23 | Guideline Section 3E1.1 subparagraph B, subparagraph 2, if the |
| 11:26AM | 24 | defendant is otherwise eligible. |
| 11:26AM | 25 | The defendant understands, however, that |

11:26AM  1   notwithstanding this present intention and still within the

11:26AM  2   terms of this plea agreement, the prosecution reserves the

11:26AM  3   right to argue to the contrary, in the event that new

11:26AM  4   information is received related to those issues and/or to call

11:26AM  5   and examine witnesses on those issues, if either the U.S.

11:26AM  6   Probation Office finds to the contrary of the prosecution's

11:26AM  7   intentions or this Court requests evidence to be presented on

11:26AM  8   those issues.

11:26AM  9          The parties also agree and understand that

11:27AM  10  notwithstanding the parties' agreement herein, this Court is

11:27AM  11  not bound by any stipulation entered into by the parties, but

11:27AM  12  will be the final determiner of any facts relevant to

11:27AM  13  sentencing with the aid of a presentence report.  The parties

11:27AM  14  understand that the Court's rejection of any stipulation

11:27AM  15  between the parties does not constitute a refusal to accept the

11:27AM  16  plea agreement, since the Court is expressly not bound by

11:27AM  17  stipulations between the parties.

11:27AM  18          The parties further agree and understand, however,

11:27AM  19  that if the Court accepts the plea agreement, the Court would

11:27AM  20  be bound to the parties' agreement pursuant to Rule 11(c)(1)(C)

11:27AM  21  of the Federal Rules of Criminal Procedure, that a sentence of

11:27AM  22  not more than 20 years of imprisonment is the appropriate

11:27AM  23  disposition in this case.

11:27AM  24          Your Honor, the parties represent that as of today's

11:27AM  25  date there are no material facts in dispute.  The defendant is

11:27AM   1   aware that typically he would have the right to appeal his

11:28AM   2   conviction and the sentence imposed.  However, pursuant to the

11:28AM   3   terms of this plea agreement, Mr. Miller is knowingly and

11:28AM   4   voluntarily waiving his right to appeal except in two limited

11:28AM   5   circumstances:

11:28AM   6         First, if the Court were to sentence the defendant to

11:28AM   7   a range above and beyond what is found to be the applicable

11:28AM   8   guideline range by the Court, the defendant would have the

11:28AM   9   right to appeal that portion of the sentence which is above and

11:28AM  10   beyond the applicable guideline range.

11:28AM  11         The defendant also is waiving his right to challenge

11:28AM  12   his conviction by collateral attack, including any brought

11:28AM  13   under Title 28, United States Code, Section 2255.  However,

11:28AM  14   with the exceptions that I just noted, number one being that if

11:28AM  15   he is sentenced above and beyond the guideline range that is

11:28AM  16   found to be applicable to the Court; secondly, he would also

11:29AM  17   retain his right to collaterally attack his conviction if he

11:29AM  18   believes he has a legitimate claim of ineffective assistance of

11:29AM  19   counsel.  The prosecution retains its right to appeal the

11:29AM  20   sentence in a manner in this case under any circumstances.

11:29AM  21         There are a number of financial disclosures which are

11:29AM  22   required of the defendant pursuant to this plea agreement,

11:29AM  23   including the obligation to disclose any assets to the U.S.

11:29AM  24   Probation Office as well as to authorize the United States

11:29AM  25   Attorney's Office to obtain his credit report.

11:29AM   1          More specifically, the defendant agrees to notify the

11:29AM   2   Financial Litigation Unit of the U.S. Attorney's Office before

11:29AM   3   making any transfer as any interest in property with a value

11:29AM   4   exceeding $1,000 owned directly or indirectly, individually or

11:29AM   5   jointly, by the defendant, including any interest held or owned

11:29AM   6   under any name, including trusts, partnerships, and

11:30AM   7   corporations.

11:30AM   8          The defendant understands that this Court, in imposing

11:30AM   9   his sentence, will consider the provisions of the Sentencing

11:30AM  10   Guidelines, but understands there is no promise or guarantee as

11:30AM  11   to the applicability or nonapplicability of those guidelines.

11:30AM  12          The defendant likewise understands that this agreement

11:30AM  13   will not be accepted or rejected by the Court until it has had

11:30AM  14   an opportunity to review and consider the presentence report.

11:30AM  15   The defendant also understands that the Court will not accept

11:30AM  16   this plea agreement unless the Court determines that the charge

11:30AM  17   adequately reflects the seriousness of the actual offense

11:30AM  18   behavior and that accepting the plea agreement would not

11:30AM  19   undermine any statutory purposes of sentencing.

11:30AM  20          By entering this plea agreement, the defendant is

11:30AM  21   waiving a number of important trial rights, both constitutional

11:30AM  22   and otherwise, including the right to have a jury of his peers

11:31AM  23   determine his fate, including the right to choose whether or

11:31AM  24   not to testify at that trial.

11:31AM  25          The defendant understands that by pleading guilty he

11:31AM    1    is waiving all of these rights, and those rights have been

11:31AM    2    explained to him along with the consequences by his counsel.

11:31AM    3         In regard to use of plea statements, if after signing

11:31AM    4    this plea agreement the defendant decides not to plead guilty,

11:31AM    5    as provided herein, or pleads guilty or subsequently makes a

11:31AM    6    motion before this Court to withdraw his guilty plea, and the

11:31AM    7    Court grants that motion, the defendant agrees that any

11:31AM    8    admission of guilt that he makes by signing this agreement or

11:31AM    9    that he makes while pleading guilty today in his allocution, as

11:31AM   10    set forth in this plea agreement, may be used against him in

11:31AM   11    his subsequent trial if the defendant later proceeds to trial.

11:31AM   12         Pursuant to this plea agreement, the defendant is

11:31AM   13    knowingly, voluntarily, and intelligently waiving any

11:31AM   14    protections afforded by Rule 11(f) of the Federal Rules of

11:32AM   15    Criminal Procedure, as well as Rule 410 of the Federal Rules of

11:32AM   16    Evidence regarding the use of statements made in this agreement

11:32AM   17    or during the course of pleading guilty when and if the plea of

11:32AM   18    guilty is later withdrawn.  The only exception to this

11:32AM   19    paragraph is where the defendant fully complies with this

11:32AM   20    agreement but the Court nonetheless rejects it.  Under those

11:32AM   21    circumstances, the United States may not use those statements

11:32AM   22    of defendant for any purpose.

11:32AM   23         The defendant also understands that the prosecution

11:32AM   24    will apprise the Court and the U.S. Probation Office the

11:32AM   25    nature, scope, and extent of the defendant's conduct regarding

11:32AM  1   the charges against him, any related matters, as well as any

11:32AM  2   matters in aggravation or mitigation which are relevant to

11:32AM  3   sentencing.

11:32AM  4          There is a cooperation provision as part of this plea

11:32AM  5   agreement.  The defendant agrees that he will fully cooperate

11:32AM  6   with the United States, including agreeing to testify

11:32AM  7   truthfully at any and all trials, hearings, or other

11:33AM  8   proceedings in which the prosecution requests him to testify.

11:33AM  9   That is including but not limited to grand jury proceedings,

11:33AM  10  trial proceedings involving codefendants and others charged

11:33AM  11  later in the investigation, sentencing hearings, and any

11:33AM  12  related civil proceeding.

11:33AM  13         The defendant understands that pursuant to this

11:33AM  14  cooperation provision, if it is determined by the

11:33AM  15  U.S. Attorney's Office that he has provided substantial

11:33AM  16  assistance, the prosecution may move the Court to depart from

11:33AM  17  the Sentencing Guidelines on the grounds that the defendant has

11:33AM  18  provided substantial assistance to authorities in the

11:33AM  19  investigation or prosecution of another person who has

11:33AM  20  committed an offense.  That motion would be made pursuant to

11:33AM  21  either guideline section 5K1.1 and/or Rule 35(b) of the Federal

11:33AM  22  Rules of Criminal Procedure.  The defendant understands,

11:33AM  23  however, that the decision as to whether to make such a request

11:33AM  24  or motion lies entirely within the discretion of the

11:34AM  25  prosecution.  And this agreement does not require the

11:34AM   1    prosecution to make such a motion.

11:34AM   2         The defendant and his attorney acknowledges that apart

11:34AM   3    from any written proffer agreement, no threats, promises,

11:34AM   4    agreements or conditions have been entered into by the parties

11:34AM   5    other than those set forth in this plea agreement to induce the

11:34AM   6    defendant to plead guilty.  Apart from any written proffer

11:34AM   7    agreement, this agreement supersedes all prior promises,

11:34AM   8    agreements, or conditions between the parties.

11:34AM   9         To become effective, this agreement must be signed by

11:34AM   10   all signatories, and that has been done in this case, Your

11:34AM   11   Honor, as reflected on page 21 of the plea agreement.  That

11:34AM   12   summarizes the terms of our agreement, Your Honor.

11:34AM   13        THE COURT:  Mr. Mizono, do you agree that the

11:34AM   14   U.S. Attorney's Office through Mr. Inciong have described the

11:34AM   15   essential terms of your client's plea agreement with the United

11:34AM   16   States?

11:34AM   17        MR. MIZONO:  Yes, Your Honor.

11:35AM   18        THE COURT:  And, Mr. Miller, there are a number of

11:35AM   19   important provisions of your plea agreement that Mr. Inciong

11:35AM   20   has just described.  There is one in particular that I always

11:35AM   21   like to call out to a defendant's attention.  It is what we

11:35AM   22   sometimes refer to as the appellate waiver provision;

11:35AM   23   Mr. Inciong described it accurately.  It is set forth in your

11:35AM   24   particular agreement at paragraph 13.  What that particular

11:35AM   25   paragraph says, Mr. Miller, is that by virtue of entering into

11:35AM  1   this plea agreement with the United States, you are agreeing to

11:35AM  2   give up or waive all of your rights to appeal or to

11:35AM  3   collaterally attack the Court's judgment and sentence in this

11:35AM  4   case, and you agree to do so including all legally waivable

11:35AM  5   claims except in the two limited circumstances that Mr. Inciong

11:35AM  6   accurately described.  Those being, first, the alleged

11:35AM  7   ineffective assistance of counsel, if you believe that you were

11:35AM  8   provided such assistance.  And, secondly, to the extent that

11:36AM  9   the Court sentences you to something above what the applicable

11:36AM  10  guideline range calls for, you retain your right to challenge

11:36AM  11  only that portion above the applicable guideline range, and you

11:36AM  12  may do so either by direct appeal or by collateral attack.

11:36AM  13       Except in those two limited circumstances, this plea

11:36AM  14  agreement says you are agreeing or waiving all of your other

11:36AM  15  rights to challenge the Court's judgment and sentence; do you

11:36AM  16  understand that, sir?

11:36AM  17       THE DEFENDANT:  Yes, Your Honor.

11:36AM  18       THE COURT:  And by virtue of entering into this plea

11:36AM  19  agreement, you would also be giving up a number of important

11:36AM  20  trial and trial related rights.  Those are largely described in

11:36AM  21  your particular agreement at paragraphs 17 and 18, so I know

11:36AM  22  you've gone over those, both through reading yourself and also

11:36AM  23  with counsel, based on your statements.  However, I'd like to

11:36AM  24  go over those with you myself now.

11:36AM  25       First of all, Mr. Miller, do you understand that under

11:36AM  1   the constitution and laws of the United States you have the

11:36AM  2   right not to plead guilty and to proceed to a trial, including

11:36AM  3   a trial by jury, on the charges that have been brought against

11:37AM  4   you?

11:37AM  5           THE DEFENDANT:  Yes, Your Honor.

11:37AM  6           THE COURT:  Do you understand, sir, that if you

11:37AM  7   proceed to trial you would be presumed innocent, which means

11:37AM  8   that the government would have the burden of proving your guilt

11:37AM  9   to a jury beyond a reasonable doubt, and that at no time would

11:37AM  10  you have the burden of proving that you are not guilty?

11:37AM  11          THE DEFENDANT:  Yes, Your Honor.

11:37AM  12          THE COURT:  Do you further understand, Mr. Miller,

11:37AM  13  that if you were to proceed to trial, in order to be found

11:37AM  14  guilty at that trial, a jury of 12 persons from this local

11:37AM  15  community would have to find your guilt not only beyond a

11:37AM  16  reasonable doubt, but they would also have to do so

11:37AM  17  unanimously?

11:37AM  18          THE DEFENDANT:  Yes, Your Honor.

11:37AM  19          THE COURT:  Do you understand, Mr. Miller, that at all

11:37AM  20  stages of the prosecution, which includes trial, you have the

11:37AM  21  right to the assistance of counsel, as you do here this

11:37AM  22  morning, and if at any point in time you could not afford

11:37AM  23  counsel, one would be appointed for you by the Court at no cost

11:37AM  24  to you?

11:37AM  25          THE DEFENDANT:  Yes, Your Honor.

| | | |
|---|---|---|
| 11:37AM | 1 | THE COURT:  Do you understand further that at any |
| 11:37AM | 2 | trial you would have the right to see and to hear all of the |
| 11:37AM | 3 | government's evidence and witnesses and to have those witnesses |
| 11:38AM | 4 | questioned by your own attorney? |
| 11:38AM | 5 | THE DEFENDANT:  Yes, Your Honor. |
| 11:38AM | 6 | THE COURT:  Do you further understand, Mr. Miller, |
| 11:38AM | 7 | that at any trial you could object to any of the evidence |
| 11:38AM | 8 | offered by the United States and you could present evidence of |
| 11:38AM | 9 | your own in your case in chief, including through witness |
| 11:38AM | 10 | testimony that is compelled through the Court's subpoena power, |
| 11:38AM | 11 | if that were necessary? |
| 11:38AM | 12 | THE DEFENDANT:  Yes, Your Honor. |
| 11:38AM | 13 | THE COURT:  Do you understand further, Mr. Miller, |
| 11:38AM | 14 | that you would have the right to testify on your own behalf, if |
| 11:38AM | 15 | there were a trial, and of course that's if and only if you |
| 11:38AM | 16 | chose to do so; and if you chose not to, no inference or |
| 11:38AM | 17 | suggestion of your guilt could be drawn by the jury by the fact |
| 11:38AM | 18 | that you chose not to testify? |
| 11:38AM | 19 | THE DEFENDANT:  Yes, Your Honor. |
| 11:38AM | 20 | THE COURT:  Do you understand, Mr. Miller, that by |
| 11:38AM | 21 | entering a plea of guilty this morning, and if I were to accept |
| 11:38AM | 22 | that plea, there will be no trial and you will have given up |
| 11:38AM | 23 | each of these trial related rights that I just mentioned? |
| 11:38AM | 24 | THE DEFENDANT:  Yes, Your Honor. |
| 11:38AM | 25 | THE COURT:  Do you also understand, Mr. Miller, that |

11:38AM   1   in order to proceed with your guilty plea, you will also need

11:38AM   2   to give up or waive your right not to incriminate yourself?

11:39AM   3   And the reason for that is, I'm about to ask you a few

11:39AM   4   questions about what you did that makes you guilty of Count 1,

11:39AM   5   and those questions will need to be answered.

11:39AM   6           THE DEFENDANT:  Yes, Your Honor.

11:39AM   7           THE COURT:  Do you have any questions, sir, regarding

11:39AM   8   these rights that I've just outlined?

11:39AM   9           THE DEFENDANT:  No, Your Honor.

11:39AM   10          THE COURT:  And knowing these rights, Mr. Miller, do

11:39AM   11  you still wish to proceed with your plea?

11:39AM   12          THE DEFENDANT:  Yes, Your Honor.

11:39AM   13          THE COURT:  And you are a United States citizen; is

11:39AM   14  that correct?

11:39AM   15          THE DEFENDANT:  Yes, Your Honor.

11:39AM   16          THE COURT:  As a United States citizen, you need to

11:39AM   17  understand that the charge that has been brought against you

11:39AM   18  and that you are prepared to plead guilty to is considered a

11:39AM   19  felony offense.  If your plea is accepted and you are adjudged

11:39AM   20  guilty of this offense, the adjudication by the Court could

11:39AM   21  deprive you of what many consider to be valuable civil rights.

11:39AM   22  And those civil rights include the right to vote, the right to

11:39AM   23  hold public office, the right to sit on a jury, as well as the

11:39AM   24  right to possess or bear a firearm.  Do you understand that?

11:39AM   25          THE DEFENDANT:  Yes, Your Honor.

| | | |
|---|---|---|
| 11:39AM | 1 | THE COURT:  With respect to sentencing, Mr. Miller, |
| 11:39AM | 2 | United States law establishes detailed Sentencing Guidelines |
| 11:40AM | 3 | that specify and provide guidelines and guidance to the Court |
| 11:40AM | 4 | and to the parties regarding the appropriate sentence for those |
| 11:40AM | 5 | who are convicted of, which includes those who plead guilty to |
| 11:40AM | 6 | federal crimes.  The sentencing judge in this case, most likely |
| 11:40AM | 7 | myself, must consider those guidelines and additionally must |
| 11:40AM | 8 | consider the sentencing factors that are set forth at Title 18 |
| 11:40AM | 9 | of the United States Code, Section 3553(a), what we sometimes |
| 11:40AM | 10 | shorthand refer to as the Section 3553(a) factors. |
| 11:40AM | 11 | Although the guidelines must be considered by the |
| 11:40AM | 12 | sentencing judge, the guidelines are perhaps what the name |
| 11:40AM | 13 | might imply to you and others.  They are guidelines which means |
| 11:40AM | 14 | they are advisory on this Court only.  Do you understand that? |
| 11:40AM | 15 | THE DEFENDANT:  Yes, Your Honor. |
| 11:40AM | 16 | THE COURT:  Have you discussed with Mr. Mizono how the |
| 11:40AM | 17 | Sentencing Guidelines might apply to your case? |
| 11:40AM | 18 | THE DEFENDANT:  Yes, Your Honor. |
| 11:40AM | 19 | THE COURT:  And do you understand, sir, that the |
| 11:40AM | 20 | Court, as I sit here today, cannot with precision determine how |
| 11:41AM | 21 | the Sentencing Guidelines apply to your case?  I will not be |
| 11:41AM | 22 | able to do that until after a presentence investigation and |
| 11:41AM | 23 | investigation report have both been completed.  That will not |
| 11:41AM | 24 | happen until after this morning's hearing and after both |
| 11:41AM | 25 | Mr. Mizono and Mr. Inciong have the opportunity to provide the |

11:41AM   1   Court with any comments on or objections to the contents of
11:41AM   2   that report.
11:41AM   3            THE DEFENDANT:  Yes, Your Honor.
11:41AM   4            THE COURT:  Do you understand further, Mr. Miller,
11:41AM   5   that after the Court is able to determine how the guidelines
11:41AM   6   apply to your case, and those guidelines are considered along
11:41AM   7   with the Section 3553(a) sentencing factors I mentioned a
11:41AM   8   minute ago, that the Court could impose a sentence that is
11:41AM   9   either more or less severe than what the guidelines call for?
11:41AM  10            THE DEFENDANT:  Yes, Your Honor.
11:41AM  11            THE COURT:  Do you understand that if a sentence is
11:41AM  12   imposed that is more severe than what you expect or more severe
11:41AM  13   than what the guidelines call for, you will still be bound by
11:41AM  14   both your plea as well as your plea agreement and will have no
11:42AM  15   right to withdraw from either on that basis?
11:42AM  16            THE DEFENDANT:  Yes, Your Honor.
11:42AM  17            THE COURT:  Do you understand further, Mr. Miller,
11:42AM  18   that despite any discussions you may have had with Mr. Mizono,
11:42AM  19   with Mr. Inciong, or with anyone else regarding the type or the
11:42AM  20   duration of the sentence you are likely to receive, or
11:42AM  21   regarding any sentencing recommendation that they may wish to
11:42AM  22   provide to the Court, I am not bound by those discussions nor
11:42AM  23   am I bound by any recommendations provided to me regarding
11:42AM  24   sentencing, and I could impose a sentence more severe than what
11:42AM  25   you expect up to the maximum permitted by law?

| | | |
|---|---|---|
| 11:42AM | 1 | THE DEFENDANT: Yes, Your Honor. |
| 11:42AM | 2 | THE COURT: Mr. Miller, has anyone made any promises |
| 11:42AM | 3 | to you regarding what your sentence will be? |
| 11:42AM | 4 | THE DEFENDANT: No, Your Honor. |
| 11:42AM | 5 | THE COURT: Do you understand that at the time of |
| 11:42AM | 6 | sentencing there is no limitation on the information that I can |
| 11:42AM | 7 | consider regarding your background, your character, and your |
| 11:42AM | 8 | conduct except that the information that I use must be |
| 11:42AM | 9 | sufficiently reliable? |
| 11:42AM | 10 | THE DEFENDANT: Yes, Your Honor. |
| 11:42AM | 11 | THE COURT: Do you understand, sir, that if a term of |
| 11:42AM | 12 | imprisonment is imposed as part of your sentence, a term of |
| 11:43AM | 13 | what we call supervised release will follow, at least almost |
| 11:43AM | 14 | certainly it will follow, and if you were to violate any of the |
| 11:43AM | 15 | conditions of that supervised release additional prison time |
| 11:43AM | 16 | could be imposed? |
| 11:43AM | 17 | THE DEFENDANT: Yes, Your Honor. |
| 11:43AM | 18 | THE COURT: Do you further understand, sir, that in |
| 11:43AM | 19 | the federal system parole has been abolished; and as a result, |
| 11:43AM | 20 | if a term of imprisonment is imposed as part of your sentence, |
| 11:43AM | 21 | you will not be released early on parole? |
| 11:43AM | 22 | THE DEFENDANT: Yes, Your Honor. |
| 11:43AM | 23 | THE COURT: Do you also understand, Mr. Miller, that |
| 11:43AM | 24 | as part of any sentence in this case, the Court could order you |
| 11:43AM | 25 | to pay a fine as well as a special assessment? |

11:43AM   1            THE DEFENDANT:  Yes, Your Honor.

11:43AM   2            THE COURT:  And the Court could also order you to

11:43AM   3    forfeit certain property to the government?

11:43AM   4            THE DEFENDANT:  Yes, Your Honor.

11:43AM   5            THE COURT:  Okay.  So, Mr. Miller, we have reached the

11:43AM   6    point in this morning's proceedings that I alluded to a few

11:43AM   7    minutes ago when we talked about the need to waive your right

11:43AM   8    not to incriminate yourself.  I need to be sure that you

11:43AM   9    committed the crime that you have been charged with in Count 1

11:43AM  10    of the information, and the first step in that process is to

11:44AM  11    ask AUSA Inciong to set forth the elements of that offense.

11:44AM  12            MR. INCIONG:  Yes, Your Honor.  For the charge that is

11:44AM  13    charged in the information to which defendant is entering his

11:44AM  14    guilty plea, conspiring to violate the racketeering laws of the

11:44AM  15    United States, there are three elements that the United States

11:44AM  16    must prove beyond a reasonable doubt:

11:44AM  17            First, that beginning in or around the late 1990s,

11:44AM  18    continuing up to and including June of this year 2020, there

11:44AM  19    was an agreement between Mr. Miller and at least one other

11:44AM  20    person to commit at least one crime as charged in the

11:44AM  21    information, again conspiring to violate the racketeering laws

11:44AM  22    of the United States.

11:44AM  23            Secondly, the defendant became a member of the

11:44AM  24    conspiracy knowing of at least one of its objects and intending

11:44AM  25    to help accomplish it.

11:44AM   1          Thirdly, that one of the members of the conspiracy

11:44AM   2    performed at least one overt act for the purpose of carrying

11:45AM   3    out the conspiracy.

11:45AM   4          Now in regards to the object of the conspiracy, in

11:45AM   5    this case, the specific object was to participate in the

11:45AM   6    affairs of an association in fact, as defined in Title 18,

11:45AM   7    United States Code, Section 1962(c).  There are four elements

11:45AM   8    the United States would be required to prove as part of that

11:45AM   9    object.

11:45AM   10         First, that there was an ongoing enterprise with some

11:45AM   11   sort of formal or informal framework for carrying out its

11:45AM   12   objectives consisting of a group of persons associated together

11:45AM   13   for a common purpose of engaging in a course of conduct.

11:45AM   14         Secondly, that the defendant was employed by or

11:45AM   15   associated with that enterprise.

11:45AM   16         Third, that the defendant participated directly or

11:45AM   17   indirectly in the conduct or the affairs of the enterprise

11:45AM   18   through a pattern of racketeering activity or the collection of

11:46AM   19   unlawful debt.

11:46AM   20         Finally, fourth, that the enterprise engaged in or its

11:46AM   21   activities in some way affected commerce between one state and

11:46AM   22   another state or between the United States and a foreign

11:46AM   23   country.

11:46AM   24         Those are the required elements that the United States

11:46AM   25   would need to prove beyond a reasonable doubt, Your Honor.

11:46AM  1          THE COURT:  Mr. Mizono, do you have any disagreement
11:46AM  2  with Mr. Inciong's description of the elements of Count 1?
11:46AM  3          MR. MIZONO:  I do not, Your Honor.
11:46AM  4          THE COURT:  Then I'll turn back to Mr. Inciong to set
11:46AM  5  forth the evidence that the government would offer in this case
11:46AM  6  if it were to proceed to trial.
11:46AM  7          MR. INCIONG:  Thank you, Your Honor.  If this case
11:46AM  8  proceeded to trial the United States would present evidence to
11:46AM  9  show the following:
11:46AM  10          That beginning at least in or around the year 2014,
11:46AM  11  Wayne Miller, the defendant and others, known and unknown, were
11:46AM  12  members and associates of the Miske Enterprise.  Members and
11:47AM  13  associates of the Miske Enterprise operated principally under
11:47AM  14  the direction and protection of Michael J. Miske, Jr. who used
11:47AM  15  his power over members and associates of the Miske Enterprise,
11:47AM  16  his reputation for violence in the community and the various
11:47AM  17  corporate entities under his control to enrich the members and
11:47AM  18  associates of the Miske Enterprise as well as to protect their
11:47AM  19  criminal activity.
11:47AM  20          The evidence would show that the Miske Enterprise,
11:47AM  21  including its leadership, membership, and associates
11:47AM  22  constituted an enterprise, as that term is defined by Title 18,
11:47AM  23  United States Code, Section 1961, subparagraph 4, that is a
11:47AM  24  group of individuals and entities associated in fact.
11:47AM  25          The evidence would show that the Miske Enterprise was

11:47AM   1   engaged in and its activities affected interstate and foreign

11:47AM   2   commerce.  This was done in a number of ways, Your Honor, and

11:48AM   3   some will be referenced which I will elaborate on later.

11:48AM   4          For example, cocaine was trafficked by Mr. Miller as

11:48AM   5   part of the enterprise.  Cocaine originates only in South

11:48AM   6   America and this would have had to affect foreign commerce.

11:48AM   7   Firearms are routinely obtained and possessed in furtherance of

11:48AM   8   the enterprise.  Those firearms were manufactured outside the

11:48AM   9   State of Hawaii and this would have affected interstate

11:48AM   10  commerce.

11:48AM   11         Likewise, there were interstate communications using

11:48AM   12  telecommunication devices and messaging services that would

11:48AM   13  have traveled across state lines, thus affecting interstate

11:48AM   14  commerce.  GPS, or global positioning trackers were used by

11:48AM   15  Mr. Miller and other members of the enterprise.  Those likewise

11:48AM   16  used satellite beacons and signals that would have affected

11:49AM   17  interstate commerce.  Those are just some of the ways

11:49AM   18  interstate commerce was affected.

11:49AM   19         The evidence would show that the Miske Enterprise

11:49AM   20  operated within the District of Hawaii and elsewhere and

11:49AM   21  constituted an ongoing organization whose members and

11:49AM   22  associates functioned as a continuing unit for a common purpose

11:49AM   23  of achieving the objectives of the Miske Enterprise.

11:49AM   24         The evidence would further show that beginning at

11:49AM   25  least in or about 2014 Mr. Miller and others, known and

| | | |
|---|---|---|
| 11:49AM | 1 | unknown, were persons employed by and associated with the Miske |
| 11:49AM | 2 | Enterprise, that those members willfully and knowingly |
| 11:49AM | 3 | combined, conspired, confederated and agreed together and with |
| 11:49AM | 4 | each other to violate the racketeering laws of the United |
| 11:49AM | 5 | States.  That is, to conduct and participate, directly and |
| 11:49AM | 6 | indirectly, in the conduct of the affairs of the Miske |
| 11:49AM | 7 | Enterprise through a pattern of racketeering activity, as that |
| 11:49AM | 8 | term is defined in Title 18, United States Code, Section 1961, |
| 11:49AM | 9 | subparagraph 1 and subparagraph i. |
| 11:50AM | 10 | The evidence would show that the racketeering activity |
| 11:50AM | 11 | to which Mr. Miller and others agreed to included acts |
| 11:50AM | 12 | involving murder, kidnapping, acts related to the use of |
| 11:50AM | 13 | interstate commerce facilities in the commission of murder for |
| 11:50AM | 14 | hire plots, offenses involving the felonious trafficking of |
| 11:50AM | 15 | controlled substances, specifically cocaine, and acts relating |
| 11:50AM | 16 | to obstruction of justice as alleged in the information. |
| 11:50AM | 17 | The evidence would show that beginning in or about the |
| 11:50AM | 18 | spring of 2016, Mr. Miller and others agreed to assist Michael |
| 11:50AM | 19 | J. Miske, Jr. with carrying out the kidnapping and murder of |
| 11:50AM | 20 | Johnathan Fraser.  Although Miller hoped that Miske would |
| 11:50AM | 21 | eventually would change his mind and not carry through with his |
| 11:50AM | 22 | intention to kidnap and murder Fraser, Miller nonetheless |
| 11:50AM | 23 | agreed to assist Miske in developing a plan and understood that |
| 11:50AM | 24 | Miske indeed intended to carry out that plan. |
| 11:51AM | 25 | Mr. Miller did not directly participate in carrying |

11:51AM  1   out the kidnapping or murder, but he assisted in other ways

11:51AM  2   including by helping Miske with the planning of the kidnapping

11:51AM  3   and murder and purchasing items that Miske intended to use to

11:51AM  4   carry out the kidnapping and murder.

11:51AM  5       The evidence would show in this case that Johnathan

11:51AM  6   Fraser was kidnapped and murdered on or about July 30, 2016.

11:51AM  7   In the fall of 2018, at a time when the United States did not

11:51AM  8   have sufficient evidence to charge Mr. Miller for his role in

11:51AM  9   this murder, Mr. Miller disclosed to the United States in

11:51AM  10  proffer protected statements that he had in fact played a role

11:51AM  11  in the 2016 kidnapping and murder of Mr. Fraser.  As part of

11:51AM  12  this guilty plea, Mr. Miller has agreed to acknowledge these

11:51AM  13  facts that he previously disclosed in proffer protected

11:51AM  14  statements.

11:51AM  15      Also in the fall of 2018, again at a time when the

11:51AM  16  United States did not have sufficient evidence to charge him

11:52AM  17  for his role in these offenses, Mr. Miller disclosed to the

11:52AM  18  United States in proffer protected statements that between in

11:52AM  19  or about 2015 and in or about 2016, Michael J. Miske, Jr. had

11:52AM  20  instructed Miller to arrange for other individuals to be

11:52AM  21  assaulted and even murdered.  In addition to Johnathan Fraser,

11:52AM  22  as I discussed previously, Miske instructed Mr. Miller to

11:52AM  23  arrange for five other individuals to be murdered.  Although

11:52AM  24  Miller agreed to assist Mr. Miske, none of these individuals

11:52AM  25  were ultimately killed.

11:52AM  1          As part of his guilty plea, Mr. Miller has agreed to

11:52AM  2     acknowledge these facts that he previously admitted in proffer

11:52AM  3     protected statements.  The evidence would show that in or about

11:52AM  4     October of 2016 Mr. Miller agreed to kidnap an accountant on

11:52AM  5     Mr. Miske's behalf.  Mr. Miller and another individual did in

11:52AM  6     fact kidnap the accountant in Honolulu, held him for several

11:53AM  7     hours, but ultimately released him.

11:53AM  8          THE COURT:  Did you mean, Mr. Inciong -- Mr. Inciong,

11:53AM  9     I'm sorry to interrupt you, did you mean with respect to the

11:53AM  10    accountant that the date at issue was October 2017?

11:53AM  11         MR. INCIONG:  I'm sorry if I said something different.

11:53AM  12    I meant October 2017.  Yes, thank you.  In that particular

11:53AM  13    incident, the October 2017 kidnapping, that is an example, Your

11:53AM  14    Honor, where interstate commerce was affected as the vehicle

11:53AM  15    that Mr. Miller and the other individual used to kidnap and

11:53AM  16    hold the accountant was a vehicle that was manufactured outside

11:53AM  17    the State of Hawaii and shipped to Hawaii, thus affecting

11:53AM  18    interstate commerce.

11:53AM  19         The evidence would also show that from at least in or

11:53AM  20    about 2014 until in or about 2018, Mr. Miller distributed

11:54AM  21    controlled substances, including methamphetamine as well as

11:54AM  22    cocaine.  Specifically in or about 2014, Mr. Miller and another

11:54AM  23    of Mr. Miske's associates, that would be specifically

11:54AM  24    coconspirator Michael J. Buntenbah, attempted to arrange an

11:54AM  25    approximately $400,000 cocaine transaction on Mr. Miske's

| 11:54AM | 1 | behalf, but both Mr. Miller and Buntenbah were arrested in |

11:54AM   1   behalf, but both Mr. Miller and Buntenbah were arrested in

11:54AM   2   California before they could arrange for the cocaine to be

11:54AM   3   transported to Hawaii.

11:54AM   4        The evidence would further show that in or about 2016

11:54AM   5   Mr. Miske instructed an employee of one of his companies to

11:54AM   6   create fraudulent pay stubs for Mr. Miller so that Mr. Miller

11:54AM   7   could submit them to his probation office under the guise that

11:54AM   8   he was legitimately employed.  Mr. Miller did in fact receive

11:54AM   9   these fraudulent pay stubs and submitted them to his probation

11:55AM   10   officer.

11:55AM   11        That, Your Honor, is a summary of the evidence that

11:55AM   12   the United States would present at trial to show Mr. Miller is

11:55AM   13   in fact guilty of conspiring to violate the racketeering laws

11:55AM   14   of the United States.

11:55AM   15        THE COURT:  Mr. Miller, do you understand the evidence

11:55AM   16   that the government would offer in this case if it were to

11:55AM   17   proceed to trial?

11:55AM   18        THE DEFENDANT:  Yes, Your Honor.

11:55AM   19        THE COURT:  And do you agree, sir, that what the

11:55AM   20   government said you did is true?

11:55AM   21        THE DEFENDANT:  Yes, Your Honor.

11:55AM   22        THE COURT:  Mr. Miller, in your own words, please

11:55AM   23   describe what you did that makes you guilty of Count 1.

11:55AM   24        THE DEFENDANT:  I was employed by Miske, transported

11:55AM   25   cocaine, transported money, provided firearms, kidnapping,

| | | |
|---|---|---|
| 11:55AM | 1 | planning murders -- I did a lot. |
| 11:56AM | 2 | THE COURT: I'm sorry, I did not want to interrupt |
| 11:56AM | 3 | you. Did that complete your statement? |
| 11:56AM | 4 | THE DEFENDANT: Yes, Your Honor. |
| 11:56AM | 5 | THE COURT: And these activities that you just |
| 11:56AM | 6 | described, among other things, kidnapping, you said firearms, |
| 11:56AM | 7 | controlled substances including cocaine, and planning murders, |
| 11:56AM | 8 | those were all activities that you engaged in since roughly |
| 11:56AM | 9 | 2014 until the present or until at least the time you were |
| 11:56AM | 10 | arrested in 2018; is that fair? |
| 11:56AM | 11 | THE DEFENDANT: Yes, Your Honor. |
| 11:56AM | 12 | THE COURT: And you did all of these things as a |
| 11:56AM | 13 | member of what the government has referred to as the Miske |
| 11:56AM | 14 | Enterprise; is that also fair? |
| 11:56AM | 15 | THE DEFENDANT: Yes, Your Honor. |
| 11:56AM | 16 | THE COURT: And you were a member, is that true, |
| 11:56AM | 17 | Mr. Miller, of a group of individuals who, for lack of a better |
| 11:56AM | 18 | term, did the bidding on behalf of Mr. Miske? |
| 11:56AM | 19 | THE DEFENDANT: Yes, Your Honor. |
| 11:57AM | 20 | THE COURT: Is it fair to say that he was the leader |
| 11:57AM | 21 | of this group of individuals? |
| 11:57AM | 22 | THE DEFENDANT: Yes, Your Honor. |
| 11:57AM | 23 | THE COURT: And he -- I'm sorry, it's unclear, but |
| 11:57AM | 24 | "he" being Michael Miske, Jr.; is that fair? |
| 11:57AM | 25 | THE DEFENDANT: Yes, Your Honor. |

| | | |
|---|---|---|
| 11:57AM | 1 | THE COURT:  And Mr. Miske, Jr. was the individual who |
| 11:57AM | 2 | directed the enterprise and gave you instructions on what to |
| 11:57AM | 3 | do? |
| 11:57AM | 4 | THE DEFENDANT:  Yes, Your Honor. |
| 11:57AM | 5 | THE COURT:  And you were not the only individual I |
| 11:57AM | 6 | gather who assisted Mr. Miske in that way; is that fair? |
| 11:57AM | 7 | THE DEFENDANT:  No, Your Honor. |
| 11:57AM | 8 | THE COURT:  All right.  So you had an agreement not |
| 11:57AM | 9 | only with him but with others as well? |
| 11:57AM | 10 | THE DEFENDANT:  Yes, Your Honor. |
| 11:57AM | 11 | THE COURT:  And what was the objective of the acts |
| 11:57AM | 12 | that you performed and did on behalf of Mr. Miske?  Was it |
| 11:57AM | 13 | personal, in other words, was it financial?  What were the |
| 11:57AM | 14 | goals that Mr. Miske, if you had any understanding of it, hoped |
| 11:57AM | 15 | to accomplish? |
| 11:57AM | 16 | THE DEFENDANT:  Some were personal, some were |
| 11:58AM | 17 | financial. |
| 11:58AM | 18 | THE COURT:  Okay.  So, for example, the cocaine that |
| 11:58AM | 19 | Mr. Inciong mentioned, it sounds like that you and |
| 11:58AM | 20 | Mr. Buntenbah, one of the defendants charged elsewhere, went to |
| 11:58AM | 21 | California; is that fair? |
| 11:58AM | 22 | THE DEFENDANT:  Yes, Your Honor. |
| 11:58AM | 23 | THE COURT:  And that occurred in or about 2014? |
| 11:58AM | 24 | THE DEFENDANT:  Yes, Your Honor. |
| 11:58AM | 25 | THE COURT:  And did you and Mr. Buntenbah go to |

| | | |
|---|---|---|
| 11:58AM | 1 | California to purchase a large amount of cocaine at the |
| 11:58AM | 2 | direction of Mr. Miske? |
| 11:58AM | 3 | THE DEFENDANT: I did under the direction of him. |
| 11:58AM | 4 | THE COURT: You did it because Mr. Miske asked you to? |
| 11:58AM | 5 | THE DEFENDANT: Yes, Your Honor. |
| 11:58AM | 6 | THE COURT: But you're not sure about Mr. Buntenbah; |
| 11:58AM | 7 | is that what you're saying? |
| 11:58AM | 8 | THE DEFENDANT: Yes, Your Honor. |
| 11:58AM | 9 | THE COURT: Okay, that's fair. That's fair. Because |
| 11:58AM | 10 | you may not know what, if anything, Mr. Miske said or did or |
| 11:59AM | 11 | directed Mr. Buntenbah to do or not, so I appreciate that. And |
| 11:59AM | 12 | your understanding is that Mr. Miske asked you to travel to |
| 11:59AM | 13 | California in 2014 to purchase about $400,000 worth of cocaine; |
| 11:59AM | 14 | is that what you did? |
| 11:59AM | 15 | THE DEFENDANT: Yes, Your Honor. |
| 11:59AM | 16 | THE COURT: And the intent I gather was to bring back |
| 11:59AM | 17 | that amount of cocaine to Honolulu to distribute to others here |
| 11:59AM | 18 | in Hawaii; is that fair? |
| 11:59AM | 19 | THE DEFENDANT: Yes, Your Honor. |
| 11:59AM | 20 | THE COURT: To make money, is that the gist of it? |
| 11:59AM | 21 | THE DEFENDANT: Yes, Your Honor. |
| 11:59AM | 22 | THE COURT: And that money would have been made on |
| 11:59AM | 23 | behalf of the Miske Enterprise if it had been successful? |
| 11:59AM | 24 | THE DEFENDANT: Yes, Your Honor. |
| 11:59AM | 25 | THE COURT: But in fact what happened was that you and |

| | | |
|---|---|---|
| 11:59AM | 1 | Mr. Buntenbah, if I'm understanding it correctly from |
| 11:59AM | 2 | Mr. Inciong's statement, were arrested in California before you |
| 11:59AM | 3 | could bring that amount of cocaine back to Hawaii in 2014? |
| 11:59AM | 4 | THE DEFENDANT:  Yes, Your Honor. |
| 11:59AM | 5 | THE COURT:  So that's an example of a situation where |
| 12:00PM | 6 | you were operating to improve or to develop financial gain for |
| 12:00PM | 7 | the enterprise; is that fair? |
| 12:00PM | 8 | THE DEFENDANT:  Yes, Your Honor. |
| 12:00PM | 9 | THE COURT:  Now, one of the first things -- I think |
| 12:00PM | 10 | one of the first specific acts that Mr. Inciong described was |
| 12:00PM | 11 | your involvement with a person named Johnathan Fraser; do you |
| 12:00PM | 12 | recall that? |
| 12:00PM | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 12:00PM | 14 | THE COURT:  Is that an example, as far as you |
| 12:00PM | 15 | understand it, Mr. Miller, of you acting on behalf of Mr. Miske |
| 12:00PM | 16 | for personal reasons? |
| 12:00PM | 17 | THE DEFENDANT:  Yes, Your Honor. |
| 12:00PM | 18 | THE COURT:  What specifically did Mr. Miske ask you to |
| 12:00PM | 19 | do with regard to Mr. Fraser? |
| 12:00PM | 20 | THE DEFENDANT:  Just to find out where he was, to get |
| 12:00PM | 21 | firearms to help him with the planning. |
| 12:00PM | 22 | THE COURT:  And what did Mr. Miske tell you he wanted |
| 12:00PM | 23 | to do to Mr. Fraser, if anything? |
| 12:01PM | 24 | THE DEFENDANT:  He wanted to kill him. |
| 12:01PM | 25 | THE COURT:  And do you have an understanding of why he |

| | | |
|---|---|---|
| 12:01PM | 1 | wanted Mr. Fraser dead? |
| 12:01PM | 2 | THE DEFENDANT:  Because he was in an accident with his |
| 12:01PM | 3 | son. |
| 12:01PM | 4 | THE COURT:  Because Mr. Fraser was in a car accident |
| 12:01PM | 5 | with Mr. Miske's son? |
| 12:01PM | 6 | THE DEFENDANT:  Yes, Your Honor. |
| 12:01PM | 7 | THE COURT:  And Mr. Miske I gather felt that |
| 12:01PM | 8 | Mr. Fraser had some responsibility for his son's death in that |
| 12:01PM | 9 | accident? |
| 12:01PM | 10 | THE DEFENDANT:  Yeah, he told me that. |
| 12:01PM | 11 | THE COURT:  He told you that?  Mr. Miller, I'm sorry, |
| 12:01PM | 12 | I'm having a little bit of trouble hearing you, so I apologize |
| 12:01PM | 13 | if I'm being a little bit repetitive.  Is that what Mr. Miske |
| 12:01PM | 14 | told you that Mr. Miske felt that Mr. Fraser was in some way |
| 12:01PM | 15 | responsible for Mr. Miske's son's death and that's why he |
| 12:01PM | 16 | wanted retribution? |
| 12:01PM | 17 | THE DEFENDANT:  Yes, Your Honor. |
| 12:01PM | 18 | THE COURT:  And so did you in fact obtain a firearm or |
| 12:01PM | 19 | firearms for Mr. Miske to use in the murder of Mr. Fraser? |
| 12:02PM | 20 | THE DEFENDANT:  If it was a specific one that he used, |
| 12:02PM | 21 | but I obtained firearms for him, yes. |
| 12:02PM | 22 | THE COURT:  What else did you do to help Mr. Miske |
| 12:02PM | 23 | with the planning, I think is what you said, for Mr. Fraser's |
| 12:02PM | 24 | murder? |
| 12:02PM | 25 | THE DEFENDANT:  I got locations for him, I found |

```
12:02PM    1    people that were willing to help him, I got vehicles for him, I
12:02PM    2    got supplies for him.
12:02PM    3              THE COURT:  So you recruited others to actually do the
12:02PM    4    bidding, do the murder?
12:02PM    5              THE DEFENDANT:  Yes, Your Honor.
12:02PM    6              THE COURT:  And my understanding is you yourself were
12:02PM    7    not one of those individuals?  In other words, you did not
12:02PM    8    participate in the murder itself?
12:02PM    9              THE DEFENDANT:  No, Your Honor.
12:02PM   10              THE COURT:  Were you present?
12:02PM   11              THE DEFENDANT:  No, Your Honor.
12:02PM   12              THE COURT:  Do you know how that was accomplished?
12:03PM   13              THE DEFENDANT:  No, Your Honor.
12:03PM   14              THE COURT:  Now, in your plea agreement you mentioned
12:03PM   15    that Mr. Miske also asked you to help him arrange for five
12:03PM   16    other individuals to be murdered, and that's a direct quote.
12:03PM   17    So these are five individuals, aside from Mr. Fraser.  Do you
12:03PM   18    remember that statement in your plea agreement?
12:03PM   19              THE DEFENDANT:  Yes, Your Honor.
12:03PM   20              THE COURT:  And so what did you do to help Mr. Miske
12:03PM   21    in that regard?
12:03PM   22              THE DEFENDANT:  I put trackers on them, I found out
12:03PM   23    where they lived, cars they drove, paid people money, just --
12:04PM   24              THE COURT:  When you say "paid people money," paid
12:04PM   25    people money to carry out the actual murder of those five
```

12:04PM  1  others?

12:04PM  2          THE DEFENDANT:  Yes, Your Honor.

12:04PM  3          THE COURT:  And when you say "put trackers," are you

12:04PM  4  talking about GPS devices?

12:04PM  5          THE DEFENDANT:  Yes, Your Honor.

12:04PM  6          THE COURT:  You placed them on these five other

12:04PM  7  individuals -- the vehicles that they owned or drove?

12:04PM  8          THE DEFENDANT:  Maybe not theirs, somebody they know.

12:04PM  9          THE COURT:  Okay, but vehicles that they used; is that

12:04PM  10  fair?

12:04PM  11          THE DEFENDANT:  Yes, Your Honor.

12:04PM  12          THE COURT:  And the goal of that was to be able to

12:04PM  13  know where they were so that when the time came you could find

12:04PM  14  them?

12:04PM  15          THE DEFENDANT:  Yes, Your Honor.

12:04PM  16          THE COURT:  And what specifically did Mr. Miske ask

12:04PM  17  you to do with regard to these five other individuals,

12:04PM  18  Mr. Miller?

12:04PM  19          THE DEFENDANT:  He wanted --

12:04PM  20          THE COURT:  Say that again?

12:04PM  21          THE DEFENDANT:  He wanted them dead or hurt or however

12:04PM  22  he was feeling that day.

12:04PM  23          THE COURT:  And he just simply asked you for

12:05PM  24  assistance?

12:05PM  25          THE DEFENDANT:  Yes, Your Honor.

12:05PM   1            THE COURT:  And were you paid for any of this

12:05PM   2    assistance that you provided to Mr. Miske for these -- either

12:05PM   3    these five individuals or for Mr. Fraser, were you compensated

12:05PM   4    in some way?

12:05PM   5            THE DEFENDANT:  Sometimes, yes.

12:05PM   6            THE COURT:  And in what fashion?  Was it with drugs,

12:05PM   7    with cash, with both, or some other way?

12:05PM   8            THE DEFENDANT:  Cash or a favor.

12:05PM   9            THE COURT:  In cash?

12:05PM   10           THE DEFENDANT:  Yes, Your Honor.

12:05PM   11           THE COURT:  If I understand your plea agreement

12:05PM   12   correctly, these five other individuals, aside from Mr. Fraser,

12:05PM   13   no harm actually came to any one of them; is that true?

12:05PM   14           THE DEFENDANT:  No, Your Honor.

12:05PM   15           THE COURT:  Why not, if you know?

12:05PM   16           THE DEFENDANT:  Never went through with them.

12:06PM   17           THE COURT:  Did Mr. Miske change his mind or -- was

12:06PM   18   there some other reason why these individuals were not killed?

12:06PM   19           THE DEFENDANT:  He probably changed his mind.

12:06PM   20           THE COURT:  You think he changed his mind?

12:06PM   21           THE DEFENDANT:  I'm sure.

12:06PM   22           THE COURT:  I'm sorry, Mr. Miller, I did not catch

12:06PM   23   that.  Did you say that Mr. Miske changed his mind?

12:06PM   24           THE DEFENDANT:  He could have.

12:06PM   25           THE COURT:  Can you give me that answer one more time?

| | | |
|---|---|---|
| 12:06PM | 1 | I apologize, I did not hear you.  Mr. Miller, can you hear me? |
| 12:06PM | 2 | THE DEFENDANT:  Yes, Your Honor. |
| 12:06PM | 3 | THE COURT:  I was asking with regard to these five |
| 12:07PM | 4 | individuals, do you know why they were ultimately not harmed or |
| 12:07PM | 5 | not killed? |
| 12:07PM | 6 | THE DEFENDANT:  No, I don't know. |
| 12:07PM | 7 | THE COURT:  You don't know? |
| 12:07PM | 8 | THE DEFENDANT:  He could have changed his mind. |
| 12:07PM | 9 | THE COURT:  But are you not certain?  It sounds like |
| 12:07PM | 10 | you're not sure why. |
| 12:07PM | 11 | THE DEFENDANT:  Yeah, I'm not sure. |
| 12:07PM | 12 | THE COURT:  And that's fair.  If you don't know |
| 12:07PM | 13 | something, just tell me that -- tell me that you don't know. |
| 12:07PM | 14 | Tell me about this accountant that you kidnapped on Mr. Miske's |
| 12:07PM | 15 | behalf, according to your plea agreement, in October of 2017. |
| 12:07PM | 16 | Where did that kidnapping occur? |
| 12:07PM | 17 | THE DEFENDANT:  In Honolulu. |
| 12:07PM | 18 | THE COURT:  Do you know the name of that accountant? |
| 12:07PM | 19 | THE DEFENDANT:  No, Your Honor. |
| 12:07PM | 20 | THE COURT:  Did Mr. Miske tell you why he wanted that |
| 12:07PM | 21 | person kidnapped? |
| 12:07PM | 22 | THE DEFENDANT:  He told me that the guy owed someone |
| 12:07PM | 23 | that he knew some money. |
| 12:07PM | 24 | THE COURT:  Okay.  And wasn't paying it and that was |
| 12:07PM | 25 | the goal, to get him to pay? |

12:08PM    1              THE DEFENDANT:  Yes, Your Honor.

12:08PM    2              THE COURT:  And there was another individual that

12:08PM    3    assisted you in that kidnapping; is that correct?

12:08PM    4              THE DEFENDANT:  Yes, Your Honor.

12:08PM    5              THE COURT:  And did you in fact carry out that

12:08PM    6    kidnapping?

12:08PM    7              THE DEFENDANT:  Yes, Your Honor.

12:08PM    8              THE COURT:  And did any harm, at least long-term harm

12:08PM    9    come to that individual as a result of this incident?

12:08PM   10              THE DEFENDANT:  Yes, Your Honor.

12:08PM   11              THE COURT:  How was he harmed?

12:08PM   12              THE DEFENDANT:  He was assaulted.

12:08PM   13              THE COURT:  Assaulted, meaning he was hit, punched?

12:08PM   14              THE DEFENDANT:  Yes.

12:08PM   15              THE COURT:  Hit?

12:08PM   16              THE DEFENDANT:  No.

12:08PM   17              THE COURT:  Punched.  And did you do that or did the

12:08PM   18    other individual helping you do that or both of you?

12:08PM   19              THE DEFENDANT:  Both.

12:08PM   20              THE COURT:  Okay.  And did that individual -- were you

12:08PM   21    successful, Mr. Miller, in getting that individual to pay the

12:08PM   22    money that was owed to Mr. Miske's colleague?

12:08PM   23              THE DEFENDANT:  No, Your Honor.

12:08PM   24              THE COURT:  Were you paid by Mr. Miske for that work?

12:09PM   25              THE DEFENDANT:  No, Your Honor.

12:09PM   1            THE COURT:  I want to back up just a second.  The five
12:09PM   2   individuals, other than Mr. Fraser, that you helped Miske plan
12:09PM   3   the murder of, did Mr. Miske tell you why he wanted those five
12:09PM   4   individuals or any of the five individuals dead?  Did he tell
12:09PM   5   you why?
12:09PM   6            THE DEFENDANT:  Old grudges.
12:09PM   7            THE COURT:  Personal grudges?
12:09PM   8            THE DEFENDANT:  Yes, Your Honor.
12:09PM   9            THE COURT:  Now, in 2016 your plea agreement mentions
12:09PM  10   Mr. Miske helping you create some fraudulent pay stubs.  Do you
12:09PM  11   remember that?
12:09PM  12            THE DEFENDANT:  Yes, Your Honor.
12:09PM  13            THE COURT:  And so my understanding, reading between
12:09PM  14   the lines, is that you were on probation at the time?
12:09PM  15            THE DEFENDANT:  Yes, Your Honor.
12:09PM  16            THE COURT:  And part of your probation required you to
12:09PM  17   either be looking for work or to be employed; is that fair?
12:10PM  18            THE DEFENDANT:  Yes, Your Honor.
12:10PM  19            THE COURT:  And so Mr. Miske was creating these pay
12:10PM  20   stubs for you in order to allow you to provide those pay stubs
12:10PM  21   to your probation officer to show that you were working?
12:10PM  22            THE DEFENDANT:  Yes, Your Honor.
12:10PM  23            THE COURT:  And did you in fact provide those pay
12:10PM  24   stubs to your probation officer for that reason?
12:10PM  25            THE DEFENDANT:  Yes, Your Honor.

12:10PM   1              THE COURT:  Was he or she convinced?

12:10PM   2              THE DEFENDANT:  Yes, Your Honor.

12:10PM   3              THE COURT:  And were you in fact working for Mr. Miske

12:10PM   4    at the time as your pay stubs indicated or not?

12:10PM   5              THE DEFENDANT:  No, Your Honor.

12:10PM   6              THE COURT:  The point of that is Mr. Miske was helping

12:10PM   7    you in that regard so that you can stay out of being sent back

12:10PM   8    to jail?

12:10PM   9              THE DEFENDANT:  Yes, Your Honor.

12:10PM   10             THE COURT:  And if you avoided being sent back to jail

12:10PM   11   then he would have you available to help him with the other

12:10PM   12   acts of racketeering that we have been talking about; is that

12:10PM   13   fair?

12:10PM   14             THE DEFENDANT:  Yes, Your Honor.

12:10PM   15             THE COURT:  Mr. Inciong, I just had one quick

12:11PM   16   question.  Is the government planning on providing these

12:11PM   17   proffer protected statements that are mentioned several times

12:11PM   18   in paragraph 8 of the plea agreement to the Court?

12:11PM   19             MR. INCIONG:  We are happy to do so if the Court would

12:11PM   20   like that, Your Honor.

12:11PM   21             THE COURT:  I would appreciate it.

12:11PM   22             MR. INCIONG:  That's not a problem.

12:11PM   23             THE COURT:  All right.  So with that, let me just go

12:11PM   24   over my notes just real quick.  So with that, I'll ask both

12:11PM   25   counsel, Mr. Mizono and Mr. Inciong, are you satisfied that a

12:11PM   1   factual basis for Mr. Miller's plea of guilty to Count 1 of the

12:11PM   2   information has been established?

12:12PM   3           MR. INCIONG:  The United States is satisfied, Your

12:12PM   4   Honor.

12:12PM   5           MR. MIZONO:  On behalf of Mr. Miller, I'm satisfied,

12:12PM   6   Your Honor.

12:12PM   7           THE COURT:  Mr. Miller, I'll turn to you, sir.  As to

12:12PM   8   Count 1 of the information, how do you plead:  guilty or not

12:12PM   9   guilty?

12:12PM   10          THE DEFENDANT:  Guilty.

12:12PM   11          THE COURT:  The Court finds that the defendant,

12:12PM   12   Mr. Miller, understands the nature of this morning's

12:12PM   13   proceedings and is competent to waive indictment and proceed by

12:12PM   14   information as well as to enter a knowing and informed plea.

12:12PM   15          The Court further finds that Mr. Miller has in fact

12:12PM   16   waived indictment and consented to proceed by information, he

12:12PM   17   has done so both by executing the single page waiver of

12:12PM   18   indictment form that the Court and Mr. Mizono had

12:12PM   19   countersigned, and he has also indicated that waiver through

12:12PM   20   executing his plea agreement which references that occurrence,

12:12PM   21   that waiver.

12:12PM   22          The Court further finds that Mr. Miller has entered

12:12PM   23   this morning a knowing, informed, and voluntary plea of guilty

12:12PM   24   of Count 1 of the information and that he has done so without

12:13PM   25   coercion, force, or threat.  The Court finds that Mr. Miller's

12:13PM  1    plea of guilty is supported by an independent basis in fact

12:13PM  2    containing each of the essential elements of the single offense

12:13PM  3    to which he is pleading, that is 18 U.S.C., Section 1962

12:13PM  4    charge, and that Mr. Miller understands both the trial and the

12:13PM  5    civil rights that he would have in the absence of pleading

12:13PM  6    guilty but knowingly and voluntarily elects to waive those

12:13PM  7    rights.  The Court further finds that in pleading guilty,

12:13PM  8    Mr. Miller understands the factors that the Court will consider

12:13PM  9    at the time of sentencing, including the potential penalties

12:13PM  10   that apply to a violation of Count 1.

12:13PM  11          Mr. Miller, as you have acknowledged that you in fact

12:13PM  12   are guilty, I accept your guilty plea and adjudge you guilty as

12:13PM  13   charged to Count 1 of the information.  The Court orders the

12:13PM  14   plea agreement in this case to be filed but reserves a

12:13PM  15   determination of whether to accept it until after a presentence

12:13PM  16   investigation and investigation report have both been prepared.

12:13PM  17          May we get a sentencing date, please?

12:13PM  18          THE CLERK:  March 25, 2021 at 9:30 with Judge Watson.

12:14PM  19          THE COURT:  Is that date and time acceptable with both

12:14PM  20   counsel?

12:14PM  21          MR. INCIONG:  Yes, that's fine with the government.

12:14PM  22          MR. MIZONO:  Your Honor, thank you.

12:14PM  23          THE COURT:  Anything else that I can assist the

12:14PM  24   parties with this morning in this matter?

12:14PM  25          MR. INCIONG:  No.  Thank you, Your Honor.

12:14PM     1              MR. MIZONO:  Thank you.

12:14PM     2              THE COURT:  We will hopefully see everyone in person

12:14PM     3    next time in late March for sentencing.  We are going to take

12:14PM     4    our leave now, Mr. Miller.  Thank you very much for

12:14PM     5    participating, and we will see you in a few months.

12:14PM     6              THE DEFENDANT:  Thank you, Your Honor.

12:14PM     7              THE COURT:  We are in recess.

12:14PM     8              (Proceedings were concluded at 12:14 p.m.)

            9

           10

           11

           12

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

```
1                    COURT REPORTER'S CERTIFICATE

2              I, Gloria T. Bediamol, Official Court Reporter, United

3    States District Court, District of Hawaii, do hereby certify

4    that pursuant to 28 U.S.C. §753 the foregoing is a complete,

5    true, and correct transcript from the stenographically reported

6    proceedings held in the above-entitled matter and that the

7    transcript page format is in conformance with the regulations

8    of the Judicial Conference of the United States.

9

10             DATED at Honolulu, Hawaii, April 11, 2023.

11

12

13                              /s/ Gloria T. Bediamol

14                              GLORIA T. BEDIAMOL.

15                              RMR, CRR, FCRR

16

17

18

19

20

21

22

23

24

25
```